# 𝕎𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## SUPERVISORS OF JACKSON CO. v. LEONARD, et al.

### Decided April 17, 1880.

### (*Absent JOHNSON, JUDGE.)

<div style="margin-left:margin">1880<br>Special Term.</div>

An action of covenant was brought upon the following bond:

<div style="margin-left:margin">Supervisors of<br>Jackson Co.<br>v.<br>Leonard <em>et al.</em></div>

"Know all men by these presents, That we, George K. Leonard and A. G. Leonard, Alfred Foster, Thompson Leach and Wm. B. Caswell are held and firmly bound unto the Board of Supervisors of Jackson county, State of West Virginia, in the sum of ten thousand dollars, to the payment whereof well and truly to be made, we jointly and severally bind ourselves, our joint and several heirs and personal representatives. Sealed with our seals and dated thi 29th day of October, 1867.

"The condition of the above obligation is such, that, whereas the above bound George K. Leonard did on the 29th day of October, 1867, make and enter into a contract with R. S. Brown, Charles Harpold, John Rawlins, Denning Wardner and Isaiah Morgan, commissioners, acting for and on behalf of said Board of Supervisors, whereby the said Leonard agreed to build, erect and complete a good and substantial bridge, with solid stone abutments and good and durable wooden superstructure, to be in all respects erected, built and completed according to the said contract in writing to be attached to these presents, and reference is here given thereto for more full particulars of the way and manner said bridge is to be completed: Now, if the said George K. Leonard shall erect and complete the said bridge at the place, within the time and in the manner prescribed in the said contract hereunto annexed as aforesaid, and shall in all respects *complete*, thereby meaning comply with the said contract on his part, then this obligation shall be void, else to remain in full force and virtue."

---

*Counsel below.

1880
Special Term

Supervisors of
Jackson Co.
v.
Leonard *et al.*

The declaration also set out the contract between said George K. Leonard and the commissioners designated in the bond (which contract was not signed by the other obligors to the bond) and alleged as breaches, "that defendants have not, nor have either of them, well and truly performed, fulfilled and kept all things in said writing obligatory and contract thereto annexed mentioned and maintained on the part of the said defendants to be performed, fulfilled and kept, according to the tenor and effect, true intent and meaning of said writing obligatory and contract thereto annexed, in this, to wit, that the said defendant, George K. Leonard, has not in any manner complied with the said contract to build the said bridge; that he, the said George K. Leonard, defendant, did not erect and complete a good, substantial and durable bridge across," &c.; and thus proceeded to allege the breaches by George K. Leonard of each covenant in his contract with the commissioners, and then concludes thus: "and so the plaintiff in fact, saith, that the defendants, although often requested so to do, have not kept the said covenants by them so made as aforesaid, but have broken the same, and to keep the same with said plaintiffs have hitherto wholly neglected and refused," &c. HELD:

I. The agreement in the bond, was that the obligors should pay money to the Board of Supervisors, conditioned upon the non-performance by George K. Leonard of his contract to build the bridge, and not an agreement on their part to build the bridge. Therefore, upon failure of George K. Leonard to build the bridge, as per his contract he was required to do, then the penalty of the bond became forfeited, and the plaintiff had the right to sue upon the bond for the penalty, and as prescribed by the Code, section seventeen, chapter one hundred and thirty-one, should have recovered such damages as had been sustained, not exceeding the penalty of the bond; because if the obligors are guilty of a breach of contract at all, it is that of not paying the penalty of the bond after Leonard's non-performance of his contract, and that should have been the breach alleged in the declaration..

II. Covenant cannot be maintained upon the condition of the bond, there being no act stipulated to be done in the condition, and the condition merely showing a matter of defeasance.

III. The real and substantial contract on the part of the obligors in the bond is the agreement or obligation to pay the $10,000, for the recovery of which either debt or covenant may lie, but the action of debt is preferable.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Mason, rendered on the 16th day of April, 1878, in an action of covenant in said

court then pending, wherein the Supervisors of Jackson county were plaintiffs and George K. Leonard and others were defendants, allowed upon the petition of said defendants.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

MOORE, JUDGE, furnishes the following statement of the case :

This is an action of covenant, brought by the supervisors against George K. Leonard and others in the circuit court of Wood county, founded on a writing obligatory, and a contract set out in the declaration   The declaration was demurred to in the circuit court of Wood county, October 3, 1871.   The case was removed to the circuit court of Mason county, which said last court overruled the demurrer on the 16th day of April, 1878, and the case being then submitted to a jury, the jury found for the plaintiff and assessed the damages at $4,228.97, aggregate of principal and interest at date of verdict, upon which judgment was given.   The case was brought to this Court upon writ of error.   The substantial question for consideration by this Court, being the demurrer to the declaration, the declaration, although long, is set out in full.

<div align="center">DECLARATION.</div>

STATE OF WEST VIRGINIA, WOOD COUNTY, TO WIT:

<div align="center">*In the Circuit Court thereof :*</div>

"The supervisors of the county of Jackson, complain of George K. Leonard, A. C. Leonard, Alfred Foster, Thompson Leach and William B. Caswell, being summoned, &c., of a plea of covenant broken, for that whereas, heretofore, to-wit : on the 29th day of October, 1867, at the county of Jackson, to wit, at the county aforesaid, the said defendants, and each of them, by their certain writing obligatory, signed by the said defendants, and each of them, and sealed with the seals of

the said defendants, and each of them, and now to the court here shown, the date whereof is the day and year aforesaid, the said defendants, and each of them, covenanted and agreed with the said plaintiff by the name of the Board of Supervisors of Jackson county, West Virginia, in substance and to the effect following, that is to say:

"*Know all men by these presents,* That we, George K. Leonard and A. G. Leonard, Alfred Foster, Thompson Leach and William B. Caswell, are held and firmly bound unto the Board of Supervisors of Jackson county, State of West Virginia, in the sum of $10,000.00, to the payment whereof well and truly to be made, we jointly and severally bind ourselves, our joint and several heirs and personal representatives. Sealed with our seals and dated this 29th day of October, 1867.

"The condition of the above obligation is such, that whereas, the above bound George K. Leonard did on the 29th day of October, 1867, make and enter into a contract with R. S. Brown, Charles Harpold, John Rawlins, Denning Wardner and Isaiah Morgan, commissioner, acting for and on behalf of said Board of Supervisors, whereby the said Leonard agreed to build, erect and complete a good and substantial bridge, with solid stone abutments, and good and durable wooden superstructure, to be in all respects erected, built and completed according to the said contract in writing to be attached to these presents, and reference is here given thereto for more full particulars of the way and manner said bridge is to be completed: Now, if the said George K. Leonard shall erect and complete the said bridge at the place within the time and in the manner prescribed in the said contract hereunto annexed as aforesaid, and shall in all respects complete, thereby meaning comply with the said contract on his part, then this obligation shall be void, else to remain in full force and virtue.

"The said contract, signed and sealed with seal of the said defendant, George K. Leonard, by the name of G. K. Leonard, and on its face is without date, but was

in truth and fact signed with the hand of the said George·
K. Leonard and sealed with his seal on the said 29th
day of October, 1867, and was made and signed by three
of the said commissioners named therein as appointed by
and acting for and on behalf of the Supervisors of the
county of Jackson, by the name of the Board of Su-
pervisors of Jackson county, to wit, R. S. Brown, Isaiah
Morgan and Denning Wardner, by the name of D.
Wardner, who signed the said contract as commissioner,
and although the other two commissioners, to wit,
Charles Harpold and John Rawling, did not sign said
contract as set forth in the aforesaid writing obligatory
signed and sealed by the defendants, yet the said contract
is the same one referred to in said writing obligatory,
which was to be and was attached and annexed to said
writing obligatory, and to which reference was given for
more full particulars of the way and manner said bridge
was to be completed in the said writing obligatory; and
the said contract is in substance and effect following,
that is to say :

"Article of agreement, made and entered into between
George K. Leonard, of Wood county, West Virginia,
party of the first part, and R. S. Brown, Charles Har-
pold, John Rawling, Denning Wardner and Isaiah Mor-
gan, commissioners appointed by and acting for and on
behalf of the board of supervisors of Jackson county,
and State aforesaid, parties of the second part, witnesseth :

"That the party of the first part doth agree to build,
erect and complete a good, substantial and durable
bridge across Big Sandy creek, at the location of the
present bridge across said creek where the Charleston,
Ripley and Ravenswood turnpike crosses said creek,
near Ravenswood, to be built on the plan of the Straight
Fork bridge (another bridge the defendant, G. K.
Leonard, had built for the said plaintiff) erected by the
said party of the first part; but as the Big Sandy bridge
is to be longer, the stone are to be larger and the timber
therein so heavy as to make both the stone and wood

work thereof of the best, most substantial and durable character for a bridge of the heighth and length of said last named bridge ; said bridge to be at the least (16) sixteen feet wide in the clear and one hundred and twenty-seven feet span, to be erected on stone abutments of solid and durable masonry of the style of masonry of the said *Strait* Fork bridge ; said new bridge to be at least as high as the present bridge, the abutments to be at least (6) six feet thick at the *schubark* (marked "S" on the plan proposed by the said party of the first part, and hereunto annexed as part of these presents), and battered one inch to the foot from the face, which shall rest wholly on the solid rock in the bed of said creek, and above the *schubark,* the wall shall be at least (4) four feet thick to the top ; the wing-walls to be (3) three feet thick on the top and battered one inch to the foot each side from the base, and each to extend back at least fifty feet from front of each abutment ; said abutments to be at least —— feet wide and to be done in the best and most substantial manner of the style of masonry aforesaid ; said wing-walls to be so *stepped* up the creek bank from the rock that the face thereof shall in no part be less than two feet below the surface of the ground ; but if on inspection of the ground the parties of the second part should adjudge it best to extend the foundation of said wing-walls, in whole or in part, lower than two feet below the surface of the ground, then in that event said first party shall comply with the directions, and extend said walls as low as so directed by them, and for all extra masonry in said extension below two feet below the surface, said first party shall be allowed extra pay at the same rate per perch as the other work as aforesaid ; wing walls shall be so founded in the shores of said creek that the foundation thereof will not cave or wash from under them. The stones in all said work shall correspond in size and length with the magnitude of the work so as to make it a good workmanlike job. The viaduct and superstructure of said bridge shall in like manner be done

1880
Special Term.

Supervisors of
Jackson Co.
v.
Leonard *et al.*

in the best workmanlike manner, and of the best material of timber, large enough to make said bridge strong and durable, and a complete number one bridge of the class and character of workmanship it belongs to—taking into the account the *highth* and length of the structure and the size of the stream to be bridged; and the said wood-work shall be well and securely anchored with iron fastenings so that the same will not be moved by high waters; floors to be at least two inches thick, of sound white oak planks, closely laid; said bridge to be well roofed with lap shingles, and weatherboarded with poplar—dressed—weatherboarding, and to be painted with at least two good coats of oil and white lead. And further, it is the express understanding and agreement that said party of the first part is to furnish all the material of whatever kind, and to build, erect and complete the said bridge in all respects, of stone, iron and wood, in the best, most substantial and approved workmanlike manner, as fully and particularly as if each item was herein specially mentioned and described—it being known and understood that the party of the first part is a bridge-builder by trade, and the parties of the second part know but little about bridges—so the party of the first part is to build, erect and complete, in manner aforesaid, the said bridge in a substantial and durable manner, so that the same shall stand the *test of time and flood*, and to have the whole structure finished and delivered to the public for use on or before the first day of December, 1868.

"And it is further agreed, that in consideration of the premises aforesaid, the said parties of the second part, for and on behalf of the said Board of Supervisors of Jackson county, are to cause to be paid to the said party of the first part for the said bridge the sum of $1,000.00 on the execution of these presents, and the bonds being given for the faithful execution of said work hereto annexed, and the residue of the money now being, to wit, the sum of $———, on the 15th day of December, 1867,

and the residue of nine thousand dollars ($9,000.00)— the whole contract price—to be paid as follows, to wit: ($3,500.00) three thousand five hundred dollars out of the levy of 1868, to be paid by certificates of indebtedness to be issued by said Board of Supervisors from time to time as the work progresses, or in cash, if in the county treasury applicable thereto, and the residue, to wit, the sum of ($3,500.00) three thousand five hundred dollars, out of the county levy of 1869, which last payment shall be by certificate of indebtedness drawn by said Board of Supervisors, and to bear interest from the time when said bridge shall be completed and received; said work to begin at once, and prosecuted diligently, as the weather may permit, until completed; and said commissioners may estimate the work done and materials for the same on the ground at the end of each month, and certify the same to said Board, and upon such certificate the said Board are to pay the installments aforesaid as the work progresses as aforesaid, from time to time as aforesaid, except said last installment, which is not to be paid until the whole work is completed and received as aforesaid.

The said plan of said bridge referred to in the said last mentioned contract and annexed thereto is now here to the court shown. And although the said plaintiff hath always, from the time of making said writing obligatory and contract thereto annexed, hitherto well and truly performed, fulfilled and kept all things mentioned and contained in said writing obligatory and contract thereto annexed on its part to be performed, fulfilled and kept, according to the tenor and effect, true intent and meaning of said writing obligatory and contract thereto annexed, the said plaintiff saith that defendants have not, nor have either of them, well and truly performed, fulfilled and kept all things in said writing obligatory and contract thereto annexed, mentioned and contained on the part of the said defendants to be performed, fulfilled and kept, according to the tenor and effect, true intent

1880
Special Term.

Supervisors of
Jackson Co.
v.
Leonard *et al.*

and meaning of said writing obligatory and contract thereto annexed, in this, to wit, that the said defendant, George K. Leonard, has not in any manner complied with the said contract to build the said bridge; that he, the said George K. Leonard, defendant, did not erect and complete a good, substantial and durable bridge across Big Sandy creek at the location of the old bridge across that stream, where the Charleston, Ripley and Ravenswood turnpike crosses said creek, near Ravenswood; that he did not build a bridge across said stream on the plan of *Strait* Fork bridge erected by said defendant, Leonard, for the plaintiff; that the said defendant, Leonard, did not build said bridge of stone so large and the timber so heavy as to make both the stone and wood work of said bridge of the most substantial and durable character for a bridge of the length the said bridge was to be built; that the said defendant, Leonard, did not erect a bridge across said stream on stone abutments of solid and durable masonry of the style of masonry of the said *Strait* Fork bridge; that he did not build the said abutments at least six feet thick at the schuback marked " S " on the plan prepared by the said Leonard and attached to said contract, and said abutments were not battered one inch to the foot from the base; that said base did not set wholly in the solid rock in the bed of said creek; that he did not build said abutments above the schuback at least four feet thick to the top; that he, the said defendant, Leonard, did not build the wing-walls of said bridge three feet thick on top, and battered one inch to the foot each side from the base; that the said defendant, George K. Leonard, did not build said wing-walls so that each would or did extend back at least fifty feet from the front of each abutment; that he did not build the said abutments in the best and most substantial manner of the style of masonry as required in said contract; that he did not build said wing-walls so that they were so stepped up the bank of said creek from the rock that the base thereof was in no part less than two feet below

1880
Special Term.

Supervisors of
Jackson Co.
v.
Leonard *et al.*

the surface of the ground, and although the said commissioners required him to extend the foundation of said wing-walls more than two feet below the surface of the ground, yet he did not extend said foundation even to the depth of two feet below the surface of the ground; that said defendant, George K. Leonard, did not so found the said wing-walls in the shores of said creek that the foundations thereof would not cave or work from under them, but, on the contrary, they were by him so founded that the foundation thereof did settle and give way, and said wing-walls were so imperfectly built, and built of such poor material, that they did settle and give way and were insufficient and insecure; that the said George K. Leonard, defendant, did not use stones in all said work corresponding in size and length with the magnitude of the said work so as to make it a good workmanlike job, but, on the contrary, the stone used were entirely *too* small and short and the job a very poor and unworkmanlike one; that he, the said defendant, George K. Leonard, did not build the viaduct and superstructure of said bridge in the best workmanlike manner and of the best material, nor of good timber large enough to make said bridge strong and durable and a complete number one bridge of the character and class of workmanship to which it belonged—taking into the account the heighth and length of the structure and the size of the stream to be bridged, but, on the contrary, the timber was bad and material bad, and the workmanship of the wood-work, as well as of the stone-work, very inferior, and the whole job a very poor one, nor was the said wood-work securely fastened with iron fastenings, nor was the said floor of said bridge two inches thick of sound white oak plank, nor did the said defendant, George K. Leonard, build, erect and complete the said bridge in all respects of stone, iron and wood in the best, most substantial and approved workmanlike manner, fully and as particularly as in said contract set out; that although said defendant, George K. Leonard,

represented himself in the contract aforesaid as a bridge-builder by trade, and covenanted in said contract to build, erect and construct, in manner as set out in said contract, the said bridge in a substantial and durable manner so that the same should stand the test of time and flood, yet the said defendant, George K. Leonard, did not build, erect and construct in the manner set out in said contract the said bridge in a substantial and durable manner so that the said bridge would stand the test of time and flood, but, on the contrary thereof, the said defendant, George K. Leonard, so built, erected and constructed said bridge in such an unworkmanlike manner and of such poor material that in a very short time after the said bridge was put up both of the abutments and all of the wing-walls gave way, and the whole structure from these and by reason of many other breaches in said contract gave way and settled in such a manner that it had to be propped up, and the said plaintiff was put to great trouble and expense, to wit, to the expense of $3,000.00, in repairing the said bridge so as to make it at all safe for the public to pass over it, and so the plaintiff in fact saith that the defendants, although often requested so to do, have not kept the said covenants by them so made as aforesaid, but have broken the same, and to keep the same with said plaintiff have hitherto wholly neglected and refused, and still neglect and refuse, and so the said plaintiff saith it is injured and hath sustained damage to the amount of $10,000.00. Therefore it brings suit, &c.

*A. I. Boreman*, for plaintiffs in error, relied on the following authorities:

1 Pick. 443-449; 2 Munf. 337; 2 Rob. New Pr. 40; 3 Rob. New Pr. 364 and cases cited.

*Armstrong & Brown*, for defendants in error, cited the following authorities:

2 Bac. Abr. (Bonv. Add.) 550; 1 Swift Dig. 570; 1

Chit. Pl. 109 ; Steph. Pl. 76 ; 2 Black. Com. (Shars-wood) L. P. 157 n. 11 ; 1 Chit. Pl. 132 ; *Id.* 133, n. x ; 2 Rob. New Pr. 38 ; 3 Rob. New Pr. 364 ; 10 Johns. 57 ; 1 Munf. 45 ; Barton Pr. 107 ; 4 Gratt. 84 ; 14 Gratt. 24 ; Code ch. 125 § 29 ; 1 Bibb (Ky.) 379 ; 7 Leigh 357.

MOORE, JUDGE, delivered the following opinion of the Court:

The seeming contrariety of opinion upon the subject before us, induces me to give more full quotation from judges and text-writers than is, perhaps, really necessary in solving the question presented by this case. In *Graham* v. *Bickham*, 4 Dall. 149, defendant, by a written agreement not under seal, agreed to pay Graham $22,318.49 in specie, for $17,344.76, six per cents of the United States, and bound himself, "for the faithful performance" of the agreement, in the sum of £1,000, "to be paid to said Graham, or his order," in case the agreement was not fully complied with by the defendant. On the trial of an action on the case for damages, laid in the declaration at £10,000, founded on said agreement, verdict was found in favor of plaintiff, for £1,798 17s, 7d, subject to the opinion of the court on the question, whether the plaintiff could recover more than £1,000, in an action upon this agreement. The Supreme Court of Pennsylvania held : "The substance of the agreement between the parties was, to buy and sell stock. The penalty was merely superadded as a security for performance ; and not as a sum to be paid and received absolutely in lieu of performance. The plaintiff is entitled (notwithstanding the penalty), to recover damages, commensurate with the injury suffered by a non-performance."

*Martin* v. *Taylor*, 1 Wash. C. C. 1, was *covenant* upon an agreement under seal, whereby the defendant, in consideration of a Virginia treasury land warrant for twenty thousand acres of land, which he acknowledges to have received of the plaintiff, and of a sum of money

agreed by plaintiff to be paid on the performance of the work, stipulated by the defendant, agrees to enter the said warrant on vacant and unappropriated land in the State of Virginia, of a particular description, and to have the same surveyed and regularly returned, all at the expense of the defendant, except the surveyor's fees. The defendant in another clause of the agreement, covenants, immediately on receipt of said warrant, to proceed to locate and survey, &c. The parties for the true and faithful performance of all and singular the covenants, &c., bind themselves each to the other in the penalty of £120 Virginia currency. A new suit was moved for, on the ground that the £120 was in lieu of liquidated damages, and that as the plaintiff could recover no greater sum than that, the court had no jurisdiction of the case. Washington, Judge, held that: "Where there is a penalty in an agreement under seal, the party injured, may, at common law, sue for the whole penalty, and must be satisfied with it; or he may bring covenant, and recover in damages more or less than the penalty. (4 Burr, 2225, 6 Bro. Par. Cases, 470.) If in the latter case, the sum stipulated to be paid is not a penalty, but intended as a compensation for non-performance, it must govern the jury in the assessment of damages. But that is not the present case;" &c. As stated in Sedg. on Dam. p. 426, *note* referring to this case, it is to be remarked that the agreement contained an express covenant to do the act, for the non-performance of which the action was brought. The case therefore decides nothing as to the main point, whether covenant can be brought on a bond upon an agreement contained in the condition, and whether in such suit damages can be assessed beyond the penalty?"

Sedgwick on Measure of Damages, pages 424–426 says: "There is a clear distinction between a covenant in which the party, affirmatively stipulating to do or to refrain from doing some particular act, proceeds to secure his agreement by a penalty, and the common

bond, which merely stipulates for the payment of a sum of money, and makes its payment depend on a condition; for the performance of that condition there is no promise, unless one can be implied from the joint effect of the condition and penalty, and hence results the inquiry, whether in the action of *debt on bond* the damages can be carried beyond the penalty.

"The question has been much agitated as to damages in gross, and also as to interest, and both as against a principal and against a surety. The American rule to be deduced from all the cases seems to be, that against a surety in *debt on bond*, nothing shall be recovered beyond the penalty; that against the principal in that form of action, interest may be recovered beyond the penalty. While in England the penalty appears in all cases, except perhaps in equity, to be the absolute limit. But in neither country can damages in gross be recovered, against either principal or surety, beyond the penalty.

"If, on the other hand, the action of *covenant* be brought on an absolute and not a conditional undertaking, then the penalty is merely a security, and the party, whether principal or surety, may be sued as often as damage is sustained. But the question, what is an absolute and what a conditional undertaking, still remains. Does an ordinary bond imply an agreement to do the thing, on condition of the performance of which the penalty is to become void; and can an action of covenant be brought on it?

"This is an embarrassing and vexed question. Mr. Chitty says, (1 Chitt. Pl. 132), it seems that covenant lies on a bond, for it proves an agreement.' It is doubtful what is the purport of this language. A bond undoubtedly proves an agreement; but is the agreement proved, the one stated in the penalty—to pay the money for which the obligee declares himself bound—or in the condition? The matter is of importance, and it seems impossible, on any just construction of the agreement of the instrument, to imply from the condition an absolute

agreement.   This is not the proper place  for  a  more elaborate discussion of the matter, but it could not with propriety be altogether overlooked.   I cannot, however, say that the opinion here advanced is supported by any judicial authority ; on the contrary, in New York, the Supreme Court has clearly intimated an opinion, that an action of covenant will lie on a bond  to enfore the condition."

The New York case  to  which  Mr.  Sedgewick refers, is *Clark* v. *Bush*, 3 Cowan 151, an  action  of assumpsit. Bush & McCracken gave their note to Barney November 2, 1815, for $2,000.00, payable October 9, 1820, with interest, to be paid annually.   Bush pleaded the general issue, payment and a release, and  gave notice that there would be  given  in  evidence  a  release  of the testator (Barney) of all debts, dues, claims and demands of what name or nature soever existing against the firm of Bush & McCracken, with the necessary and proper averments, &c. ; also that Barney in his lifetime, together with Mc-Cracken, executed to Bush a bond, bearing date October 1, 1816, in the penal sum of $3,000.00, with condition, that if Barney (testator of plaintiffs) and McCracken, their heirs, &c., should well and truly, at all times, indemnify and save harmless Bush, his heirs, &c., from and against all debts, dues, claims and demands of what name or nature soever existing against the firm of Bush & McCracken, including as well all debts and demands then  due by and from  the firm, as all contracts theretofore made by them in and about the firm of Bush & Mc-Cracken, by means of which contracts Bush might, in any manner thereafter, be made liable ; then, &c.; else, &c.   Plaintiffs proved the note sued on, upon which was endorsed $140.00 November 2, 1816, for interest, the balance due being $2,807.33.   Bush then produced and proved the bond set forth in his notice ; plaintiffs then produced and proved two receipts from Bush, showing that he had been paid by the executors of Barney, to the amount of the penalty by way of indemnifying Bush

against other debts due from the firm of Bush & Mc-Cracken. The plaintiffs then insisted that the penalty of the bond being satisfied, it did not operate as a release of their demand, or in any manner bar their right to recover on the note of $2,000.00. Verdict for plaintiffs for $2,807.33.

The court held, that the plaintiffs should recover on the $2,000.00 note; Savage, Chief Justice, thought the weight of authority was " in favor of the doctrine, that in debt on bond nothing more than the penalty can be recovered; at any rate, nothing beyond that and interest, after a forfeiture, even against the principal obligor. But admitting the doctrine to apply as laid down by Lord Mansfield in *Lowe* v. *Peers*, 4 Burr. 2225, and that an action of covenant would lie on the bond in question, in which form Bush might recover the whole amount necessary to a complete indemnity, (see also *Winter* v. *Trimmer*, 1 Bl. 395, and *Perkins* v. *Lyman*, 11 Mass. 83); still it is clear that this can hold only as to McCracken, the principal, but not against Barney, who was a surety, and the extent of whose liability is the penalty of the bond." Judge Savage in commenting on the English and American cases cites the language of Lord Mansfield in *Lowe* v. *Peers*, 4 Burr. 2225, as follows: "There is a difference between covenants in general, and covenants secured by a penalty or forfeiture. In the latter case, the obligee has his election. He may either bring an action of debt for the penalty and recover the penalty; (after which recovery of the penalty he cannot resort to the covenant; because the penalty is to be a satisfaction for the whole); or if he does not choose to go for the penalty he may proceed upon the covenant, and recover more or less than the penalty *toties quoties.*" Judge Savage then says: " This *dictum* of Lord Mansfield was not called for by the case, nor is any adjudged case cited. It is however considered good law by Espinasse in his law of *nisi prius* (2 Esp. N. P. 279)." And Wilde, Judge, in *Stearns*

v. *Barrett*, 1 Pick. 449, cited by appellants' counsel, approves Lord Mansfield's language in *Lowe* v. *Peers*.

In the case of *United States* v. *Brown*, 1 Paine, C. C. 422, the action was covenant on a bond, in the penalty of $5,000.00, by which the defendant and Jacob Brown, acknowledged themselves to be held and firmly bound to the United States in that sum, and for the payment of which they bound themselves jointly and severally, with a condition, that if the said Samuel Brown, Jr., "shall well and faithfully account for all public monies that may come into his hands, as Deputy Quarter-Master-General, and faithfully account for, and distribute all public property that he may receive into his charge, then the obligation to be void, else to remain in full force and virtue." The question arising upon demurrer to the declaration was, whether *debt* or *covenant* was the proper action upon the bond? Admitting the contrariety and uncertainty of opinion both of elementary writers and adjudged cases on the question, Thompson, Judge, delivering the opinion of the Circuit Court of the United States, enunciated the principles as follows: "The general rule however is, that the action of covenant is not confined to any particular words, but may be maintained upon any sealed instrument, *where the words import an* agreement. But where the words do not amount to an agreement, covenant will not lie. In the present case, covenant might probably be maintained, upon the penalty of the bond, if the breach was properly assigned. It contains an acknowledgment of an indebtedness to the United States of $5,000.00, and a promise to pay. But the breach of the covenant would be the non-payment of the $5,000.00, in part or in whole. The first count in the declaration sets out that the defendant did covenant to pay to the United States the sum of $5,000.00, and had the breach assigned been the non-payment of the money, it might have been unexceptionable, but the breach assigned is, that the defendant refused and neglected to pay out and distribute, or account for the

money and public property which he had received, as Deputy Quarter-Master-General. The breach assigned does not therefore come within the covenant, as set out. It is not alleged in the first count, that the defendant covenanted, or agreed to covenant for such money and public property, or to pay out and distribute the same. The breach assigned must always be clearly within the covenant."

1880
Special Term.

Supervisors of
Jacksen Co.
v.
Leonard et al

The next question considered by Judge Thompson was, whether an action of covenant will lie upon a mere condition or defeasance in a penal bond, relating to some collateral matter, and not for the payment of money? Upon that question he enunciated the doctrine : "If covenant can be maintained upon the condition of the bond, it must be because it contains *per se* an agreement to do some act. But there are no words in the condition importing an agreement. It merely sets out what shall avoid the covenant or obligation contained in the penal part of the bond, and is for the benefit of the obligor, and showing the terms and conditions upon which he can exonerate and discharge himself from the debt he has acknowledged he owed the obligees. The condition when taken by itself is senseless and imperfect as a contract. Although there is some uncertainty as to what words shall be deemed to amount to a covenant, I think it may be laid down as a safe conclusion, that covenant will not lie upon words in an instrument inserted by way of condition or defeasance, by the performance of some collateral act. It may be pret·y safely affirmed, that covenant upon this cordition cannot be sustained against Jacob Brown, the surety. He is not even named in the condition, and there are no words which in any shape or manner import an agreement on his part, either himself to account for the faithful expenditure of public money, and the distribution of public property, or that the defendant shall do it. If covenant will therefore lie against the defendant, it presents the singular case, that upon the same instrument one kind of action

will lie against one of the obligors, which will not lie against the other. It is unnecessary to decide, whether in all cases where covenants are secured by a penalty, the extent of damages is limited to such penalty, as against the principal. It certainly is, so far as relates to the surety. And if, as against the principal, damages may be recovered beyond the penalty, we have a case where, upon the same instrument, there is one rule of damages for one obligor, and a different rule for the other. Such incongruities, I apprehend, are not sanctioned by the law." Demurrer was sustained.

In the case of *Ward* v. *Johnston,* 1 Munf. 45, covenant was maintained by Johnston against Long and Ward on a joint and several bond in the penalty of £400, whereby it was conditioned after reciting that Long had bargained and sold to Johnston a certain tract of land, that if the above bound Long, and Ward his security, " doth make unto said James Johnston, his heirs, executors or assigns a clear deed in fee simple to the said tract of land," at or before a specified time, the obligation was to be void, otherwise to remain in full force and virtue. The breach assigned was that such deed was not made and delivered. The bond exhibited was in the usual form of a *joint* and *several* bond, the condition corresponding with that set forth in the declaration, except that a proviso added thus : " Provided that, if default be made by the said Long, the said Johnston doth agree to take the sum of two hundred pounds like money as aforesaid, with lawful interest from this date." Wickham argued in that case, that covenant would not lie against Ward, as he was only surety, and so named in the condition of the bond given by him and Long, the principal, for making a title to the lands in question. Tucker, Judge, reasoned that, " the condition is, that the bond shall be void, if Long and Ward, his security, make unto the plaintiff, or his heirs, &c., a clear deed in fee simple for the lands. Now Long and Ward might have been joint tenants or tenants in common, or coparceners in the

land; in which case *both* must have joined in the conveyance, though *one* only had sold to the plaintiff; and since the condition imports that something is to be done by both the seller and the security, (and not by either of them singly), we must suppose it was understood by both parties that something was *necessary* to be done by both. Therefore, an action of covenant, I conceive, will lie against both."

Mr. Robinson in his New Practice, vol. 3, p. 365, citing this case, says: it is "to say the least, of very questionable authority," and directs attention to his New Practice, vol. 2, p. 40. He also directs attention to the fact, that the case was cited in Ohio in *Huddle* v. *Worthington*, 1 Ohio 195, (mispaged 424 in Robinson), in an action of covenant on a bond, conditioned that Worthington should convey on or before a specified day, a tract of land to Huddle, by a good and sufficient general warranty deed, in fee simple, then the obligation to be void, &c. The declaration not noticing the penal or obligatory part of the bond, but charging a covenant in the words of the condition, it was held, that an action of covenant could not be sustained upon the condition, separated, as it is in the declaration, from the penal or obligatory part of the bond. But the Court said, "it might be different, if the entire bond was declared on, as in the case in first Munford, stating that the covenant was made under the penalty in the obligatory part specified. Upon demurrer, judgment was given to defendant.

Subsequently, the same Court held, in the case of *Maria Abrams* v. *Hiram Kounts and John Quinn*, in an action of covenant, that covenant could not be maintained upon the following writing obligatory:

"*Know all men by these presents*, That we, Hiram Kounts and John Quinn, of the county of Columbiana, and State of Ohio, are held, and firmly bound, in the penalty of \$1,000.00, for the true performance of a marriage contract, which the said Hiram Kounts engages to perform with Maria Abrams, of Brooke county, Vir-

ginia, against the eighth day of February next. The conditions of the obligation are such, that if the above bound Hiram Kounts, does well and truly perform the above obligation, this obligation to be void, otherwise," &c. Upon demurrer, the Court held, that the penalty of the bond could not be regarded as liquidated damages, and that the instrument is not one upon which covenant can be maintained. 4 Ohio 214, cited in 3 Rob. Prac. 365, (New ed.,) which also cites the case of *United States* v. *Brown,* which Mr. Robinson follows with this language : "There appears then to be force in the objection taken in the argument of *Ward* v. *Johnson,* that covenant will not lie on the *condition* of a bond, unless there be an *agreement* in the condition that it shall be performed."

He also states, that : " What has been said in 2 Rob. Pract. 37–40, as to what words do and what do not amount to a covenant, supports the conclusion to which Thompson, Judge, came, that covenant will not lie upon words in an instrument inserted by way of condition or defeasance by the performance of some collateral act, Paine 424." Mr. Sedgwick in a note to his treatise on damages, page 425, (second edition), referring to 1 Chitt. Pl., 131, says: "Mr. Chitty cites several cases: *Hill* v. *Carr,* 1 Chy. Cas., 294; *Holler* v. *Carr,* 3 Swans., 648, which is in fact the same ; *Norrice's Case,* Hardress 178, and Com. Dig. Covenant, (A. 2.) The two first cases (in fact one), contain the *obiter dictum,* that " *covenant lies upon a bond."* The third was covenant on a covenant proper ; the word *oblige* only being used instead of the usual phrase ; and Lord C. B. Comyns, with his usual precision, says, " covenant lies, *if an agreement appear* in an obligation." This is unquestionably true, *if the agreement appear.* But in the condition of a bond to do or refrain from doing any particular act secured by a given penalty, does any agreement appear, absolutely to do the act, or respond in indefinite damages? Practically, we well know that it is not so understood ; the

obligor always considers the penalty as limiting the extent of his obligation."

It is true, no particular words are required to make a covenant. Any words which *import an agreement between the parties* to a deed, will be sufficient for that purpose. Com. Dig. Cov. (A. 2,) citing *Hallett* v. *Wylie,* 3 Johns. 44; *Harris* v. *Nichols,* 5 Munf. 483. And covenant lies when a man covenants with another, by deed, to do something, and does it not. Com. Dig. Cov. (A. 1.) It appears plain from all authorities, that to sustain an action of covenant upon a bond, there must appear in the condition an agreement to do the specific act secured by the penalty of the bond; and if such agreement does not appear, then the true remedy is to sue the obligor on the bond for the penalty, to be discharged by the payment of the damages sustained by the obligee, as provided by section seventeen, chapter one hundred and thirty-one, Code of West Virginia.

The Supreme Court of Missouri refused to sustain an action of covenant on a sheriff's bond, against the sheriff and his deputies, in *State, to use of Crawford and Adams* v. *Woodward et al.,* 8 Mo. 225, top page. The declaration contained two breaches of the condition of the bond, with averment that the defendants had not paid the penalty; to the declaration defendants demurred and the demurrer was sustained by the court. The question before the Supreme Court, was: Whether an action of covenant would lie on a sheriff's bond? Scott, Judge, in the opinion of the court, said: "It is clear that, by the common law, an action of covenant was a concurrent remedy with debt on a single bill obligatory, or a penal bond, subject to be defeated by the performance of conditions. In such an action, the breach of covenant would be the non-payment of the debt in the one case; in the other the non-payment of the penalty, and on that breach damages would have been assessed equal in amount to the penalty for which judgment would have been rendered, and the defendant, in order to obtain re-

1880
Special Term.

Supervisors of
Jackson Co.
v.
Leonard et al.

lief against the penalty, was driven to his bill in equity. This being found oppressive, the common law was altered by the statute of 8 and 9 William III. Our statute regulating actions on penal bonds is similar to the English law, and declares that when any action shall be prosecuted in any court of law, upon any bond for the breach of any condition, other than the payment of money, or shall be prosecuted for any penal sum for the non-performance of any covenant or written agreement, the plaintiff in his declaration shall assign the specific breaches for which the action is brought. Section 5. The sixth section of said act prescribes, that upon the trial of such actions, if the jury find that any assignment of such breach is true, they shall assess the damages occasioned by the breach, in addition to their finding, or any other question of fact submitted to them. It must be admitted, that in all actions of covenant, some breach of covenant must be assigned, otherwise the declaration is bad. In a bond for the payment of $5,000.00, conditioned to be void upon the faithful discharge of the duties of an office, wherein consists the covenant? Is the condition a covenant? It cannot, with any propriety of language be so called. It is a collateral thing, which the obligor has not covenanted to do, and which he may do or not without violating any covenant, if he is willing to pay the penalty. A. binds himself to pay B. $1,000.00, to be void on condition that A. performs a journey to Rome. Does A. thereby promise to go to Rome? By no means. He covenants to pay money, and the journey to Rome is only an act by which he may relieve himself from his obligation to do so, and which he may do or not without violating any covenant. *United States v. Brown*, Paine C. C. 442; *Gentry v. Murphy*, 1 Mo. 114. If a breach must be assigned in an action of covenant, and there be no breach of covenant assigned in a declaration on a bond for the payment of money, to be void upon the performance of collateral acts, but the non-payment of the penalty, damages must then be assessed for that

1880
Special Term.

Supervisors of
Jackson Co.
v.
Leonard *et al.*

breach, otherwise there would be no authority in the record to enter a judgment for the amount of the penalty. An action of covenant is brought for the non-payment of the penalty of a bond, where would be the warrant in the record to enter judgment for the amount of the penalty, unless damages were assessed on the breach assigned for the non-payment of it, and judgment would be rendered for the damages.

The seventeenth section of chapter one hundred and thirty one of the West Virginia Code is as follows: " In an action on an annuity bond, or a bond for money payable by instalments, where there are further payments of the annuity, or further instalments to become due after the commencement of the action, or in any other action for a penalty for the non-performance of a condition, covenant, or agreement, the plaintiff may assign as many breaches as he thinks fit. If there be judgment for the plaintiff on a demurrer, or by confession, or by default or *nil dicit*, he may so assign after such judgment. The jury impanelled in any such action shall ascertain the damages sustained, or the sum due by reason of the breaches assigned, including interest thereon to the date of the verdict; and judgment shall be entered for what is so ascertained, provided, that if the action be on such annuity bond, or a bond for money, payable by instalments, such judgment shall also be for such further sums as may be afterwards assessed, or be found due upon a *scire facias*, assigning a further breach. Such *scire facias* may be sued out from time to time, by any person injured, against the defendant, or his personal representative, and for what may be assessed or found due upon the new breach or breaches assigned, execution may be awarded."

Our statute was intended to follow eight and nine, William III., and to have the same effect. And being similar in its chief features to the Missouri statute I think the remarks of Judge Scott are pertinent to the case before us, and that the action in this case should have been

upon the bond under the seventeenth section of chapter one hundred and thirty one of the Code.

It is plain that the building of the bridge, mentioned in the condition of the writing obligatory, is a collateral thing, which the obligors, in the writing obligatory, have not by that writing covenanted to build, and which they may do or not, without violating any covenant, if they are willing to pay the penalty, as provided for by said seventeenth section. Leonard may have been bound by the agreement to build the bridge as agreed, but that agreement was not the deed of the other defendants, and being strangers to that agreement, they could not have been held to have been bound by any covenant therein to build the bridge, however much it may have been the covenant of George K. Leonard. It may be true, as argued, that the making of the contract between George K. Leonard and Brown, Harpold, Rawlins, Wardner and Morgan, commissioners acting on behalf of the board of supervisors, to build the bridge, was contemporaneous with the making of the writing obligatory by George K. Leonard, A. G. Leonard, Alfred Foster, Thompson Leach and William B. Caswell, to the obligee, the board of supervisors of Jackson county, but that did not make A. G. Leonard and the others co-covenantors with George K. Leonard in that contract, to build the bridge, because they are nowhere mentioned in it in any manner whatever. And although the condition of the obligation says that " the said Leonard agreed to build, erect and complete a good and substantial bridge," &c., " to be in all respects erected, built and completed according to the said contract in writing to be attached to these presents, and reference is here given thereto for more full particulars of the way and manner said bridge is to be completed;" yet the contract, even if it had been attached to the writing obligatory, did not thereby become a part of the writing obligatory, nor did the other obligors become parties to the contract by its being attached (if it ever was so attached) to the bond.

1880
Special Term.

Supervisors of
Jackson Co.
v.
Leonard et al.

The bond itself explains the purpose intended by attaching the contract to the bond, viz: merely for reference thereto, "for more full particulars of the way and manner said bridge is to be completed." But who is to build and complete the bridge? The condition of the bond says, George K. Leonard. There is no agreement in the condition that the sureties, the co-obligors of Leonard in the bond should, or would build and complete the bridge; in fact their names are not mentioned in the condition. All that the bond shows is, that if George K. Leonard complied with the contract he had entered into to build the bridge, then the obligation on the part of the obligors in the bond to pay the $10.000.00 would be void; but if George K. Leonard did not comply with his contract to build the bridge, then the obligation to pay the $10.000.00 would remain in full force and virtue. Their agreement in the bond, was therefore to pay money upon the non-performance by George K. Leonard of his Syllabus 1. contract to build the bridge, and not an agreement on their part to build the bridge. Therefore, having bound themselves to pay $10,000.00 upon condition that George K. Leonard did not comply with his contract, and if it be true, that said Leonard did not comply with his contract, then the penalty of the bond became forfeited, and the plaintiff had a right to sue upon the bond for the penalty, in the way prescribed by the Code, and should have recovered such damages as had been sustained, not exceeding the penalty of the bond; because if the defendants are guilty of a breach of contract at all, it is that of not paying the penalty of the bond, after Leonard's non-performance, and that should have been the breach alleged in the declaration. The only breach alleged in this declaration is, that Leonard did not perform his part of his contract to build the bridge, and does not set out any breach of the writing obligatory. The declaration is not sufficient either in covenant or debt.

Therefore, I am of opinion, that the demurrer to the declaration should have been sustained; and that the cir-

cuit court erred in overruling the demurrer to the declaration. This would, perhaps, have been different, had the real and substantial contract between the plaintiff and the defendants been to have built the bridge as contracted by George K. Leonard, for then the principles as laid down in *Kennedy* v. *Kennedy*, 2 Bibb 465, and *Beasley* v. *Gillespie*, 4 Bibb 314, cited by appellees, would have been applicable, because it would have been sufficient to have declared upon the instruments according to their legal and true import, with such averments only as show the breaches of their real and substantial contract, as in its real meaning was understood by the parties. And the same principle is laid down in *Davis* v. *Noaks*, 3 J. J. Marsh. 495, where it is held, that it is sufficient to assign breach in the non-performance of the act stipulated to be done in the condition, without noticing the penalty. But in this case the condition shows no such real and substantial contract as to George K. Leonard's coobligors, therefore the Kentucky cases are not applicable.

The judgment of the circuit court must be reversed, with costs; the demurrer should be sustained, with leave to the plaintiff to amend, and the case remanded to the circuit court of Mason county, to be proceeded in according to the principles laid down in this opinion, and further according to the law governing in such cases.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.    CASE REMANDED.